UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID CARTER, JR. | CIVIL ACTION NO. 13-797 |
| V. | JUDGE JOHN W. deGRAVELLES |
| SHERYL L. RANATZA, ET AL. | MAG. JUDGE STEPHEN C. RIEDLINGER |

## RULING AND ORDER

Before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) Plaintiff opposes the motion. (Doc. 21.) The Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff brought suit pursuant to 48 U.S.C. § 1983.

After carefully considering the law, facts, and arguments of the parties, the motion to dismiss is granted.

I. **Factual Allegations and Background**

Plaintiff David Carter, Jr., brought suit against Defendants Sheryl L. Ranatza, Jim Wise, Matthew Hardy, Henry Powell, Greta W. Jones and Jerrie Ledoux, all in their Official Capacities as Members of the Committee on Parole; the Committee on Parole; and James M. LeBlanc, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections ("Department"). (Doc. 14, P. 1-2.) Plaintiff alleges that Defendants applied an ex post facto law to him in violation of Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution of 1974. (Doc. 14, P. 6-7 ¶ 18.)

In his Amended Complaint, Plaintiff pleads that on December 11, 1973, he was charged with first degree murder for the death of Lionel T. Reab, who was killed on November 30, 1973. (Doc. 14, P. 4 ¶ 7.) Plaintiff alleges that on February 12, 1974, he plead guilty to the reduced

1

charge of second degree murder as a result of a plea bargain. (Doc. 14, P. 4 ¶ 8.) Plaintiff alleges that in exchange for the guilty plea, he was told that his sentence would be life imprisonment but that, after twenty years, he would be eligible for parole in accordance with La. R.S. 14:30.1 as it read at the time of the offense and of his guilty plea. (Doc. 14, P. 4 ¶ 9.) Plaintiff asserts that at the time of his offense and guilty plea, La. R.S. 14:30.1 contained the following provision: "[w]hoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years." (Doc. 14, P. 3 ¶ 6.) Plaintiff claims that the parole eligibility was the gravamen of the plea bargain and that the parole eligibility was why he pleaded guilty. (Doc. 14, P. 4 ¶ 9.)

Plaintiff alleges that prior to accepting his guilty plea, he spoke to his attorney, Ralph Barnett; the prosecutor Marion Edwards; and the trial judge, the Honorable Charles Gaudin. (Doc. 14, P. 4 ¶ 9.) Plaintiff claims that Ralph Barnett told him he "was eligible for parole in twenty years" (Doc. 14, P. 4 ¶ 9.) Plaintiff claims that Marion Edwards told him "you will not have the benefit of parole, probation or suspension of sentence for a period of twenty years. You understand that?" (Doc. 14, P. 4 ¶ 9.) Plaintiff claims that he responded, "Yes, sir." (Doc. 14, P. 4 ¶ 9.) Furthermore, Plaintiff asserts that Judge Gaudin told him the following:

> Let the Court explain this to you Mr. Carter. In as much as the District Attorney has agreed to a second degree murder charge, the Court is obliged to sentence you to prison for life, you shall not be eligible for parole or suspension of sentence for a period of twenty years. That doesn't mean that after twenty years you will be released because you may not be released after twenty years. Do you understand that?

(Doc. 14, P. 4 ¶ 9.)

Plaintiff claims that he responded "yes," and that Judge Gaudin also said "[t]hat is the soonest you will be able to get out but it may be longer than that." (Doc. 14, P. 4-5 ¶ 9.)

Plaintiff alleges that, after the entry of his guilty plea, Judge Gaudin signed a Commitment Order sentencing him to imprisonment at hard labor for life without benefit of parole, probation or suspension of sentence for a period of twenty years. (Doc. 14, P. 5 ¶ 10.) The order purportedly gave him credit for time served from December 7, 1973, through the date of the Order. (Doc. 14, P. 5 ¶ 10.)

Plaintiff claims that in 1975, La. R.S. 14:30.1 was amended to "[increase] the penalty for second degree murder," by increasing the period during which an offender was eligible for parole, probation or suspension of sentence from twenty to forty years. (Doc. 14, P. 5 ¶ 11.) Plaintiff further alleges that in 1979, La. R.S. 14:30.1 was amended again, removing any benefit of parole from the statute. (Doc. 14, P. 5 ¶ 12.) Plaintiff asserts that after serving twenty years of his sentence, he applied for parole in 1993, but was "advised by the then existing parole board that he was not eligible for parole despite the language of the statue governing his sentence and the language of his Commitment Order." (Doc. 14, P. 5 ¶ 13.)

Plaintiff claims that in 2013, he retained counsel in an effort to withdraw his guilty plea because he had not received what he bargained for, i.e., eligibility for parole after twenty years. (Doc. 14, P. 6 ¶ 14.) Plaintiff asserts he was denied this relief by the Louisiana courts. (Doc. 14, P. 6 ¶ 14.)

Plaintiff alleges that he recently applied for parole to the Parole Committee, which was created in 2012 to replace the previously exiting Parole Board. (Doc. 14, P. 6 ¶ 15.) Plaintiff alleges that the Parole Committee, in a letter dated August 28, 2013, advised him that its records "show you are not eligible for parole." (Doc. 14, P. 6 ¶ 15.)

Plaintiff claims that "[t]he Parole Committee represents that the [Department], rather than the Committee, has the sole authority to determine a Louisiana inmate's eligibility for parole."

(Doc. 14, P. 6 ¶ 16.) Further, according to the complaint, "[t]he Committee further maintains that pursuant to that authority the [Department] through the person of its Secretary, defendant LeBlanc, has determined that plaintiff is not eligible for parole." (Doc. 14, P. 6 ¶ 16.)

Plaintiff asserts that the Committee and/or LeBlanc are applying to him the 1979 amendment to La. R.S. 14:30.1, which removed parole eligibility for those who commit second degree murder and which therefore increased his punishment. (Doc. 14, P. 6-7 ¶ 18.) Plaintiff claims that applying the 1979 amendment to him is an ex post facto law in violation of Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution of 1974. (Doc. 14, P. 6-7 ¶ 18.)

Plaintiff seeks a preliminary and permanent injunction to restrain and enjoin the defendants and their agents, officers, successors and assigns from applying the 1979 amendment to La. R.S. 14:30.1 to him and thereby denying him parole consideration. (Doc. 14, P. 6-7 ¶ 19.) Plaintiff also seeks a declaratory judgment holding that the retrospective application of the 1979 amendment to La. R.S. 14:30.1 is in violation of Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution. (Doc. 14, P. 6-7 ¶ 19.)

## II. Present Motion

Defendant LeBlanc now moves for dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that: (1) "Plaintiff failed to exhaust administrative remedies with respect to any and all claims presented to the Court" as required by the Prison Litigation Reform Act (herein, "PLRA"), and (2) that Plaintiff has failed to state a claim upon which relief can be granted because "Plaintiff fails to understand that he is denied eligibility for parole consideration due to La. R.S. 15:574.4(B)(1)—in effect since 1968—

whereby no individual with a life sentence can be eligible for parole consideration until said sentence is commuted to a fixed number of years[.]" (Doc. 19, P. 1.)

In his Memorandum in Opposition, Plaintiff makes two arguments: (1) that the PLRA does not apply to Plaintiff's pending action because it is not related to "prison conditions" or "prison life," and (2) that La. R.S. 15:574.4(B)(1) is not controlling and that the Louisiana Supreme Court has not resolved the issue presented in this case. (Doc. 21, P. 7, 9.)

## III. Discussion

### A. Procedural Issues

First, it must be determined whether Defendant properly brought his Motion to Dismiss pursuant to Rule 12(b)(6). While Defendant claims to bring this motion pursuant to Rule 12(b)(6), Defendant attaches to his Memorandum in Support an Affidavit by Rhonda Z. Weldon to show that Plaintiff has not exhausted his administrative remedies because he filed no administrative remedy procedure. (Doc. 19-2.) Rule 12(d) provides, in pertinent part, that "[i]f, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

In *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010), the Fifth Circuit addressed this issue and explained:

> [F]actual disputes concerning exhaustion may be resolved by judges. However, we also conclude that when courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56.

*Id.*

Thus, the Court must determine whether Defendant's Affidavit is properly before the Court to determine if the motion must be converted to a summary judgment.

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4) (emphasis added). Defendant's affidavit does not provide that any information contained within it is based on "personal knowledge." Defendant's affidavit contains the following: "The above is true and correct to the best of her information and belief." (Doc. 19-2, P. 2.)

The Fifth Circuit has explained that summary judgment evidence is required "to be based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir.2003); *see also Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir.1994) (holding that statements based on information and belief are insufficient to meet the personal knowledge requirement.); *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949) ("Belief, no matter how sincere, is not equivalent to knowledge.").

In *Bolen*, the Defendant stated in an affidavit that "on information and belief, and to the best of affiant's recollection, the original letter was timely signed by affiant and Deborah Walworth [his wife] …" *Bolen*, 340 F.3d at 313. The *Bolen* court struck the affidavit for failure to meet the personal knowledge requirement. *Id.*

In this case, Weldon's affidavit is similarly based "on information and belief." (Doc. 19-2, P. 2.) Thus, Weldon's affidavit is struck because it does not meet the requirements of Rule 56(c)(4) in that it is not based on 'personal knowledge.'

Therefore, as there is no additional evidence or affidavits beyond the pleadings, the Motion to Dismiss shall not be converted to a summary judgment pursuant to Rule 12(d).

### B. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Mississippi*, 574 U.S. ____, 135 S.Ct. 346 (2014), the Supreme Court has explained:

> Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, and A. Steinman, Federal Practice and Procedure, p. 644 (2014 ed.) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, § 1215, p. 172 (3d ed. 2002) (Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

*Id.*, 135 S.Ct. at 346-347.

Interpreting Rule 8(a) and *Twombly*, the Fifth Circuit explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (emphasis added).

Later, in *In re Great Lakes Dredge & Dock Co. LLC.*, 624 F.3d 201, 210 (5th Cir. 2010), the Fifth Circuit explained:

7

> To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. [*Doe v. Myspace,* 528 F.3d 413, 418 (5th Cir. 2008)] (citing [*Hughes v. Tobacco Inst., Inc*., 278, 278 F.3d 417, 420 (5th Cir. 2001)]).

*Id.* at 215.

Analyzing the above case law, our brother in the Western District stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. Rule Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

*Diamond Services Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *3 (W.D.La. Feb. 9, 2011) (citation omitted).

Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is

> plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-503 (citations and internal quotations omitted).

### C. The PLRA

After careful consideration of the law, the Court finds that the PLRA is not applicable to Plaintiff's claim.

42 U.S.C. § 1997e(a) of the PLRA provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

Defendant argues that Plaintiff failed to exhaust administrative remedies. (Doc. 19-1, P. 2.) Defendant argues that exhaustion of administrative remedies is mandatory and that the PLRA precludes defendant from filing suit before completing the process. (Doc. 19-1, P. 2 citing *Underwood v. Wilson* 151 F.3d 292, 293-294 (5th Cir. 1998).)

Plaintiff concedes that he is a prisoner and that this action is brought pursuant to 42 U.S.C. § 1983. (Doc. 21, P. 7.) Plaintiff also concedes that he did not file for relief pursuant to the prison administrative remedy procedures. (Doc. 21, P. 7-8.)

Plaintiff argues that the PLRA does not apply because plaintiff's action does not relate to "prison conditions." (Doc. 21, P. 8.) Plaintiff contends his claim "has nothing to do with 'prison conditions' or 'prison life.' " (Doc. 21, P. 8.) Plaintiff asserts that:

> The gravamen of [Plaintiffs'] claim is that Defendants … are applying the 1979 amendment to La. R.S. 14:30.1 to plaintiff despite the fact that both the crime to which Plaintiff plead guilty

and plaintiff's sentence thereto occurred years prior to the 1979 amendment rendering the law as written after 1979 and applied to plaintiff an ex post facto law in violation of Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution.

(Doc. 21, P. 8.)

However, the Court finds that it does not need to determine whether Plaintiff's claim is related to 'prison conditions' or 'prison life.' The threshold question in determining whether the PLRA is applicable to Plaintiff's claim is whether an administrative remedy is *available* to the Plaintiff.

In *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), the United States Supreme Court explained:

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. *All "available" remedies must now be exhausted*; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "action [s] ... brought with respect to prison conditions," whether under § 1983 or "any other Federal law." Thus federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

*Id.* (internal citations omitted) (emphasis added).

The Fifth Circuit recently addressed Louisiana's administrative remedies in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). There, the Fifth Circuit explained the availability of administrative remedies under the Louisiana grievance process this way:

> When *"the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint,"* exhaustion is not required under the PLRA because there is no "available" remedy. Booth v. Churner, 532 U.S. 731,

10

> 736, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Days v. Johnson,* 322 F.3d 863, 867–68 (5th Cir.2003) (per curiam) (finding remedy "unavailable" when prisoner's injury prevented him from filing grievance), *overruled by implication on other grounds by Jones,* 549 U.S. at 216, 127 S.Ct. 910.

*Dillon*, 596 F.3d at 267 (emphasis added).

In this case, a key provision within the Louisiana Administrative Code related to the ("ARP") is as follows:

> The following matters *shall not be appealable* through this administrative remedy procedure … Board of Pardons and Parole decisions (under Louisiana law, these decisions are discretionary and may not be challenged).

La. Admin. Code tit. 22, § 325 (F)(3)(a)(iv)(b) (emphasis added).

Defendants contend that if Plaintiff filed an ARP, he would have been given a "very simple and straightforward answer as to why he [is] ineligible for parole consideration." (Doc. 19-1, P. 3.) However, based on the plain language of the Louisiana Administrative Code, such a grievance would be unavailable to Plaintiff because it is specifically excluded. Thus, because Plaintiff's claim concerns being denied parole eligibility by the Board of Parole, he had no administrative remedy available under Louisiana's ARP. Therefore, the PLRA would not apply to Plaintiff, even though he conceded that he did not use the administrative remedies of the prison.

### D. Louisiana's Two-Part Parole Eligibility System

After careful consideration of the law, the Court agrees with Defendant that Plaintiff is not eligible for parole consideration under Louisiana's two-part parole eligibility system.

The statute at issue here, as amended in 1968, states that "… no prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years." La. R.S. 15:574.4(B)(1).

Defendant argues that Plaintiff is specifically ineligible for parole consideration by the Board of Parole due to La. R.S. 15:547.4(B)(1). (Doc. 19-1, P. 4.) Defendant claims that "Plaintiff has never been eligible for parole consideration at any point" pursuant to La. R.S. 15:574.4 because "Plaintiff committed the offense of Second Degree Murder on November 30, 1973, and was convicted on February 12, 1974." (Doc. 19-1, P. 4.)

Defendant argues that Plaintiff's claim was "thoroughly examined and dismissed by the Louisiana Supreme Court in *Bosworth v. Whitley*, 627 So.2d 629 (La.1993)." (Doc. 19-1, P. 4.) Defendant claims that the Louisiana Supreme Court explained that there is a distinct difference between parole eligibility and eligibility for parole consideration by the Board of Parole. (Doc. 19-1, P. 4-5.) Defendant asserts that the distinction between parole eligibility and eligibility for parole consideration by the Board of Parole is well-settled in Louisiana. (Doc. 19-1, P. 5.) Defendant claims that while "Plaintiff is parole eligible for purposes of his sentence under LA. R.S. 14:30.1, the Board of Parole cannot consider Plaintiff for parole unless or until his sentence is commuted to a fixed number of years per La. R.S. 15:574.4(B)(1)." (Doc. 19-1, P. 5.)

Plaintiff counters that "[Defendant's] assertion that the *Bosworth* court thoroughly examined the precise claim put forth by plaintiff [] is simply an over-broad misreading of *Bosworth*." (Doc. 21, P. 9.) Plaintiff claims that *Bosworth* supports his position, rather than harms it. (Doc. 21, P. 11.) Plaintiff asserts that the Louisiana Supreme court noted: "By regulating the qualifications which attach to eligibility for parole consideration, the Legislature has exercised its exclusive authority to determine length of punishment for crimes classified as felonies." (Doc. 21, P. 11 citing *Bosworth*, 627 So.2d at 632.) Furthermore, Plaintiff claims that when the Louisiana Legislature enacted La. R.S. 14:30.1 in 1973, "it specifically exercised that

12

authority with respect to the crime of second degree murder, affirmatively declaring parole eligibility in [twenty] years from sentencing." (Doc. 21, P. 9.)

However, the Court rejects Plaintiff's contentions as being inconsistent with *Bosworth*. In *Bosworth*, twenty-nine inmates were serving life terms in Angola Penitentiary for murder or aggravated rape committed in 1972 or earlier. 627 So. 2d at 630. The inmates challenged the parole consideration statute through writs of habeas corpus and mandamus seeking to be declared eligible for parole consideration. *Id.* The inmates argued that the parole consideration statute was ambiguous, unconstitutional, violated due process, and conflicted with other laws. *Id.* at 630. The case primarily concerned the alleged conflict between La. R.S. 15:574.4(B) and Article 817 of the Louisiana Code of Criminal Procedure. *Id.* at 634-35. The court ultimately found there was no conflict. *Id.* While that specific statutory conflict is not at issue in this case, the *Bosworth* court's reasoning and explanation provides clarity on the issue currently before the Court.

In explaining the parole scheme in Louisiana, the *Bosworth* court stated:

> [T]he general parole provisions contained in Section 15:574.4 clearly reveal that *parole eligibility* (which is determined by the sentence) and *eligibility for parole consideration* (which is dependent on meeting certain criteria and conditions specified by statute) are closely regulated by the Legislature.

*Bosworth v. Whitley*, 627 So. 2d 629, 631 (La. 1993) (emphasis added).

In addressing La. R.S. 15.574.4 directly, the *Bosworth* court explained:

> The Louisiana Legislature has [] provided parole consideration to inmates meeting specified standards and criteria, and has given to the Parole Board authority to make the final decision whether to release on parole. That scheme requires that those serving life sentences must first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the Board of Pardons, *before becoming eligible for parole consideration*.

13

*Bosworth v. Whitley*, 627 So. 2d 629, 632 (La. 1993) (emphasis added).

The *Bosworth* court further explained that "parole eligibility and eligibility for parole consideration are *distinct and different matters*." 627 So. 2d at 634 (emphasis added). Thus, *Bosworth*, although addressing a separate statute, establishes that before Plaintiff can become eligible for parole consideration, he must obtain a commutation from the Governor of Louisiana, regardless of how unlikely he is to receive such clemency.

Furthermore, this Court has recently addressed the issue of parole eligibility and eligibility for parole consideration in *Rollins v. LA Dep't of Corr. Officers*, No. 14-100, 2014 WL 4928992 (M.D. La. Oct. 1, 2014) *appeal dismissed sub nom. Rollins v. Louisiana Dep't of Corr. Officials*, No. 14-31181, 2015 WL 1004381 (5th Cir. Mar. 9, 2015). In that case, Rollins, a *pro se* plaintiff, was similarly serving a life sentence for second degree murder, entered in October 1973. *Id.* at *1. Rollins similarly challenged La. R.S. 14:30.1 and La. R.S. 15:574.4(B), and brought an ex post facto claim, *in forma pauperis*, seeking to be declared entitled to parole consideration. *Id.* at *1-2. In dismissing Rollins' claim as frivolous, this Court explained:

> [T]he two referenced statutes are not inconsistent and, accordingly, the enaction of La. R.S. 14:30.1 did not affect the validity of La. R.S. 15:574.4(B). In this regard, by its terms, La. R.S. 14:30.1 provided, at the time of the plaintiff's conviction, only that the plaintiff's mandatory sentence for the offense of second degree murder would be life imprisonment and that he would not be eligible for parole consideration for a period of 20 years. The statute, significantly, did not provide the converse that the plaintiff seeks to read into it, i.e., that he necessarily would be eligible for parole consideration after the lapse of that period of time. Rather, the statute provided only that for the first 20 years of his sentence, he would not be so eligible. In contrast, but not in direct contradiction, the second statute, La. R .S. 15:574.4(B), which was also in effect at the time of the plaintiff's sentence and predated the passage of La. 14:30.1, provided that any person serving a "life sentence" in this state would not be eligible for parole consideration unless and until his sentence has been "commuted to a fixed term of years." These statutes have thus created a two-part

parole eligibility system, such that a person like the plaintiff, who is serving a life sentence for second degree murder, in order to obtain parole consideration, must have **BOTH** served at least 20 years of his sentence **AND** obtained a commutation of his sentence to a fixed number of years. This two-part application of the parole eligibility procedure in Louisiana has been recognized by the courts of the State of Louisiana[1] … In addition, the United States Court of Appeals for the Fifth Circuit has recognized the existence of this two-part parole eligibility procedure in Louisiana, and has not disapproved of same.[2]

*Id.* at *2. (emphasis in original).

This Court further explained:

> Under a consistent application of the two referenced statutes, an inmate serving a mandatory life sentence for second degree murder under La. R.S. 14:30.1, as enacted at the time of the plaintiff's conviction, becomes eligible for parole after serving twenty years of his sentence (or at any time thereafter) but only becomes

---

[1] In analyzing Louisiana's jurisprudence, the Court cited to the following:

*Thomas v. State,* 2013 WL 6858311, *2 (La.App. 1st Cir. Dec.27, 2013) (concluding that the two referenced statutes are not in conflict and that the plaintiff in that case was "*eligible* for parole, but he must obtain a commutation of his sentence to a fixed number of years in accordance with La. R.S. 15:574.4 in order to be *considered* for parole" (emphasis in original)); *Lewis v. Louisiana State Penitentiary,* 2010 WL 1838802, *1 (La.App. 1st Cir. May 7, 2010) (same, noting that "[i]t is well established that parole eligibility and eligibility for parole consideration are distinct and different matters"); *Schouest v. Louisiana State Parole Board,* 2008 WL 5377800, *1 (La.App. 1st Cir. Dec.23, 2008) (same, finding that La. R.S. 14:30.1, as enacted in 1973, does not conflict with La. R.S. 15:574.4, as enacted in 1968, because "[p]arole eligibility is determined by the sentence meted out upon conviction, which is different from eligibility for parole consideration, as regulated by R.S. 15:574.4"); *State v. Henderson,* 672 So.2d 1085, 1092 (La.App. 4th Cir.), *writ denied,* 680 So.2d 1996) (same, finding "no conflict" between the two statutes).

*Rollins*, 2014 WL 4928992, at *2.

[2] In analyzing the Fifth Circuit's recognition of Louisiana's parole system, the Court cited to the following:

*James v. Cain,* 56 F.3d 662, 668–69 (5th Cir.1995) (remanding a petitioner's habeas corpus claim for the purpose of evaluating the voluntariness of his guilty plea where he argued that, because of alleged inadequate advice of counsel, he had not understood, when agreeing to a life sentence, that "Louisiana's two-step parole procedure," and the interaction between the state's parole procedures and the commutation requirement, resulted in the fact that "he would not automatically become parole eligible after forty years [as the statute was then enacted], but that, instead, he must have his life sentence commuted to a term of years before becoming parole eligible").

*Rollins*, 2014 WL 4928992, at *2.

15

eligible for parole consideration by the Parole Board after his sentence has been commuted by the Governor to a fixed term of years. Accordingly, inasmuch as these two statutes, La. R.S. 14:30.1 and La. R.S. 15:574.4(B), are not inconsistent as written, the enaction of the former did not nullify or invalidate the commutation requirement of the latter[.]

*Id.* at *3.

The Fifth Circuit dismissed Rollin's appeal of this Court's ruling and explained that:

The Louisiana parole statutes that Rollins relies on were in effect when he committed the crime at issue. Therefore, he has not demonstrated an Ex Post Facto Clause violation based on their application to him. *See Garner v. Jones,* 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Rollins has also not demonstrated a Due Process Clause violation because he has no constitutionally protected liberty interest in parole release. *See Board of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Bosworth v. Whitley,* 627 So.2d 629, 633 (La.1993)("[T]he Louisiana scheme specifically excludes parole consideration for inmates serving uncommuted life sentences.").

*Rollins v. Louisiana Dep't of Corr. Officials*, No. 14-31181, 2015 WL 1004381, at *1 (5th Cir. Mar. 9, 2015).

In this case, there is no allegation that Plaintiff received clemency from the Governor of Louisiana. Thus, even though Defendant admits that Plaintiff is eligible for parole based on his sentence, (Doc. 19-1, P. 5.), and even though Plaintiff relied on Judge Gaudin telling him when he plead guilty that he was eligible for parole after a period of twenty years,[3] (Doc. 14, P. 4 ¶ 9.), Plaintiff is not eligible for parole consideration because of Louisiana's two-part parole eligibility system. Therefore, Defendant's Motion to Dismiss is granted.

---

[3] While Plaintiff may have been completely unaware of the differences between parole eligibility and eligibility for parole consideration when he plead guilty, and he may have believed that being eligible for parole was all that was required for parole, Louisiana jurisprudence establishes that a judge is not required to inform a defendant of the parole requirements of La. R.S. 15:574.4. *See State v. Lewis*, 711 So.2d 383, 386 (La.App. 2 Cir.,1998) ("Since Defendant is ineligible for parole [pursuant to La. R.S. 15:574.4(A)(1)] rather than due to … the statute of conviction, the district court was not required to advise him of that ineligibility at the time it accepted his guilty plea."); *State v. Roe*, 903 So.2d 1265 (La.App. 3 Cir.,2005) ("Because the trial court is only required to designate whether a defendant is entitled to parole under the statute of conviction … the trial court was not required to inform the defendant that good time or parole would be barred under La.R.S. 15:574.4(B).").

### E. Futility of Amendment

The Court also finds that it would be futile to allow Plaintiff leave to amend his petition. The Fifth Circuit has explained that:

> Fed.R.Civ.P. 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. However, the court should freely give leave to amend "when justice so requires." It is often said that this determination rests in the sound discretion of the district court. However, the Rule "evinces a bias in favor of granting leave." The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial." Id.
>
> Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment.

*Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (citations omitted).

Here, the Court finds any amendment by Plaintiff would be futile because he has no judicial remedy available to him based on Louisiana's two-part parole eligibility system. Plaintiff's only remedy is appealing to the Governor of Louisiana and hoping that the Governor grants him clemency. Unfortunately for Plaintiff, as explained by the Louisiana Supreme Court, "an application for commutation is 'nothing more than an appeal for clemency,' and a felon's expectation that his lawful sentence will be commuted is 'simply a unilateral hope.'" *Bosworth*, 627 So. 2d at 633 (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 459 (1981)). Therefore, Plaintiff will not be granted leave to amend his Petition.

**IV.    Conclusion**

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 19.) is **GRANTED,** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on March 30, 2015.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**